# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

---

**ARAB AMERICA FOUNDATION ("AAF")**, *on behalf of itself and its members*, and **ADEL HENAWI**, **KARIM KARAM, LILY KARAM, LINA SHATARA, OMAR KURDI, STEFAN ATEEK**, and **WALLY YAZBAK**, *on behalf of themselves and others similarly situated*,

    Plaintiffs,

v.

**AWH ORLANDO PROPERTY, LLC d/b/a DOUBLETREE BY HILTON ORLANDO AT SEAWORLD**; **CRESCENT HOTELS & RESORTS, LLC**; and **HILTON WORLDWIDE HOLDINGS, INC.**,

    Defendants.

---

Civil Action No. 6:25-cv-00882

---

## <u>CLASS ACTION COMPLAINT</u>

COME NOW Plaintiffs ARAB AMERICA FOUNDATION ("AAF"), on behalf of itself and its members, and ADEL HENAWI, KARIM KARAM, LILY KARAM, LINA SHATARA, OMAR KURDI, STEFAN ATEEK, and WALLY YAZBAK, on behalf of themselves and others similarly situated ("Named Plaintiffs"), and respectfully file the instant Complaint alleging unlawful discrimination in violation of 42 U.S.C. § 1981; breach of contract; tortious

interference with a contractual relationship; and civil conspiracy, seeking an award of both compensatory and punitive damages.   In support thereof, Plaintiffs respectfully state as follows:

## PARTIES

1.     Plaintiff Arab American Foundation ("AAF") is a not-for-profit organization organized under the laws of Washington, D.C., exempt from federal income tax under Internal Revenue Code ("IRC") Section 501(c)(3), with its principal place of business located in Washington, D.C.

2.     Plaintiff Adel Henawi is an individual residing in Hastings-on-Hudson, New York, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

3.     Plaintiff Karim Karam is an individual residing in Palos Verdes Estates, California, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

4.     Plaintiff Lily Karam is an individual residing in Palos Verdes Estates, California, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for

November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

5. Plaintiff Lina Shatara is an individual residing in Louisville, Tennessee, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

6. Plaintiff Omar Kurdi is an individual residing in Strongsville, Ohio, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

7. Plaintiff Stefan Ateek is an individual residing in Arlington, Texas, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

8. Plaintiff Wally Yazbak is an individual residing in Greensboro, Georgia, who is a member of AAF that registered for and planned to attend the Connect Arab America: Empowerment Summit scheduled for November 3-5,

2023, at the DoubleTree by Hilton Orlando at SeaWorld, located in Orlando, Florida.

9.      Defendant AWH Orlando Property, LLC ("AWH"), doing business as DoubleTree by Hilton Orlando at SeaWorld ("DoubleTree"), a franchise of Hilton Worldwide Holdings, Inc., is a Foreign Limited Liability Company organized under the laws of the State of Delaware, registered and authorized to do business in the State of Florida, with its principal place of business located in Samford, Connecticut.

10.      Defendant Crescent Hotels & Resorts, LLC ("Crescent"), is a Foreign Limited Liability Company organized under the laws of the State of Delaware, registered and authorized to do business in the State of Florida, with its principal place of business located in Fairfax, Virginia.

11.      Defendant Hilton Worldwide Holdings, Inc. ("Hilton") is a Foreign Corporation organized under the laws of the State of Delaware, registered and authorized to do business in the State of Florida, with its principal place of business located in McLean, Virginia.

## **JURISDICTION**

12.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.      This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) because this Court has original jurisdiction

over Plaintiffs' cause of action alleged under 42 U.S.C. § 1981 and all other causes alleged herein present "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

14.    Defendants in this action previously stipulated to federal question jurisdiction of this Court in connection with claims or controversies arising out of cancellation of the 2023 Annual AAF Summit. *See* Consent Decree (Dkt. No. 9) at ¶ 8, *United States v. AHW Orlando Properly, LLC, d/b/a DoubleTree by Hilton Hotel Orlando at Seaworld*, No. 6:25-cv-67-GAP-DCI (M.D. Fla.) (Feb. 5, 2025). Any objections to jurisdiction are waived and/or collaterally estopped.

## **VENUE**

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the contract at issue was entered into in this District for performance in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

16.    Defendants in this action previously stipulated that venue in this Court is proper in connection with claims or controversies arising out of cancellation of the 2023 Annual AAF Summit. *See* Consent Decree (Dkt. No. 9) at ¶ 8, *United States v. AHW Orlando Properly, LLC, d/b/a DoubleTree by*

*Hilton Hotel Orlando at Seaworld*, No. 6:25-cv-67-GAP-DCI (M.D. Fla.) (Feb. 5, 2025).  Any objections to venue are waived and/or collaterally estopped.

## FACTS & BACKGROUND

### *Arab Americans and AAF*

17.    Arab Americans constitute an ethnicity made up of several waves of immigrants from the Arabic-speaking countries of the Middle East, North Africa and Sub-Saharan Africa that have been settling in sizable numbers in the United States since the 1880s.

18.    As an ethnic community, Arab Americans can identify with any racial group and more than eighty-five (85) percent of them are United States citizens.  Arab heritage reflects a culture and ancestry that is thousands of years old and includes twenty-two (22) Arab countries as diverse as Palestine, Lebanon, Egypt, Yemen, Iraq, Syria, Sudan, and Morocco.

19.    Our Nation recognizes the contributions and achievements of Arab Americans diplomacy, science, technology, as well as in art and culture, by celebrating National Arab American Heritage Month in April.  *See* Biden, Mr. President Joe, "White-House Letter from President Biden to Arab America," Apr. 26, 2021 (filed herewith as **Exhibit A**).

20.    AAF is the preeminent Arab American educational and cultural organization in the United States.  *Id*.

6

21.    AAF is a charitable educational and cultural organization founded in 2019.  *See* Declaration of Warren David (filed herewith as **Exhibit B**) at ¶ 4.  Its mission is to promote Arab heritage, culture, history, and identity in order to empower Arab Americans.  *See* Exhibit B at ¶ 5.

22.    AAF connects Arab Americans of diverse and varied national origins, political affiliation, and religious backgrounds.  *Id*.  Its 250 members and 66,000 subscribers/supporters represent nearly every trade, occupation, profession, talent, and expertise on the planet.  *Id*. at ¶ 6.

23.    The jewel in the crown of AAF's outreach efforts and programming is its annual Connect Arab America: Empowerment Summit ("Annual AAF Summit"), held for two (2) days each year at various venues located across the United States.  *Id*.

24.    On average, 400 AAF members and guests attend the Annual AAF Summit.  *Id*. at ¶ 9.  This figure is based on registration numbers for the 2021 Annual AAF Summit, held in Detroit, Michigan (300 attendees); the 2022 Annual AAF Summit, held in Falls Church, Virginia (400 attendees); and the 2024 Annual AAF Summit, held in Dearborn, Michigan (400 attendees).  *Id*. Many attendees routinely register last-minute or at the event itself.  *Id*.

25.    AAF invests significant revenue, efforts, and institutional resources into promoting and conducting the Annual AAF Summit.  *Id*. at ¶ 44. Specifically, in connection with the 2023 Annual AAF Summit, the not-for-

7

profit organization invested around $80,000.00, in overhead expenses related to planning, coordinating, and preparing for the event. *Id*.

26.    The Annual AAF Summit generates significant and important revenue for the not-for-profit organization, which provides for its continuous operation in service of the AAF mission and members. *Id*. at ¶ 45.  On average, based on net profits for the Annual AAF Summits held in 2021, 2022, and 2024, AAF generates around $200,000.00 for its operations.  *Id*.

27.    The Annual AAF Summit also provides an intrinsic and intangible benefit to both AAF members and the Arab American community at large.

### *DoubleTree by Hilton Hotel Orlando at SeaWorld*

28.    DoubleTree is a franchise and brand of Hilton.

29.    DoubleTree operates a large-scale hotel and place of public accommodation styled DoubleTree by Hilton Orlando at SeaWorld, located at 10100 International Drive, Orlando, Florida 32821, which charges fees in exchange for lodging to transient guests and customers.

30.    DoubleTree also operates a conference venue at the same location styled as the Palms Conference Center, which contains multiple ballrooms and meeting rooms for large-scale events.

31.    DoubleTree boasts 1,042 guest rooms amidst a 28-acre resort that consists of landscaped walkways bursting with tropical flowers.  Rooms inside

the DoubleTree's 17-story tower offer spectacular panoramic views of SeaWorld Parks and Downtown Orlando, Florida.

32.     Due to its ideal setting and location—and welcoming community— AAF sought to hold its 2023 Annual AAF Summit at the DoubleTree. *See* Correspondence from Mayor Jerry L. Demings dated May 31, 2023 (filed herewith as **Exhibit C**).

33.     The DoubleTree hotel at issue is owned by AWH.

34.     At all relevant times, AMH was responsible for the actions of its agents, employees, owners, managers, and directors impacting operations of the DoubleTree.

35.     The DoubleTree hotel at issue is managed by Crescent.

36.     At all relevant times, Crescent was responsible for the actions of its agents, employees, owners, managers, and directors impacting operations of the DoubleTree.

37.     The Double-Tree hotel at issue is an alter ego of AMH and Crescent. Marketing, advertising, websites, and signage do not differentiate between AMH, Crescent, and DoubleTree.

38.     The only brand held out or represented to the public in connection with the hotel at issue is Hilton. The only sub-brand held out or represented to the public in connection with the hotel at issue is DoubleTree.

*2023 Annual AAF Summit*

39.     On July 14, 2023, AAF and "AWH Partners" entered into a "Group Event Contract" related to hosting of the 2023 Annual AAF Summit from Friday, November 3, 2025, to Sunday, November 5, 2023, at the DoubleTree by Hilton Orlando at SeaWorld.  *See* Group Event Contract (filed herewith as **Exhibit D**).

40.     Under the Group Event Contract, seventy-five (75) rooms were reserved and blocked at the rate of $139.00, for the above-stated dates, in order to facilitate the 2023 Annual AAF Summit and attendance and lodging of AAF members at the event.  *See* Exhibit D at p. 1.

41.     In accordance with the Group Event Contract, the room block and agreed room rate were available until the "Cut Off Date" of October 24, 2023.  *Id.* at p. 2.  A minimum of $22,000.00 in deposits were required by the DoubleTree hotel in connection with the 2023 Annual AAF Summit.  *Id.* at pp. 2-3.

42.     The Parties bargained for provision of concessions by DoubleTree in support of the 2023 Annual AAF Summit for the benefit of both AAF and its members attending the Summit.  *Id.* at pp. 3-5.  The total minimum revenue to DoubleTree negotiated by the Parties was $70,850.00.  *Id.* at p. 4.  AAF also covenanted to generate a minimum of $50,000.00, in banquet food and beverage revenue.  *Id.* at p. 6.

43.   The Group Event Contract provides for unilateral liquidated damages whereby AAF would be required to pay DoubleTree $70,850.00, in the event it cancelled its 2023 Annual AAF Summit for any reason whatsoever.  *Id*.

44.   A tentative and generic Schedule of Events related to the 2023 Annual AAF Summit is provided at Exhibit A to the Group Event Contract. *Id*. at p. 8.

45.   Exhibit A to the Group Event Contract provides "Additional Terms and Conditions" to the agreement, which include a provision captioned "Security/Personal Property."  *Id*. at p. 10.  The security provision provides as follows:

> **Security/Personal Property** If Hotel determines in its reasonable discretion that additional security will be required for your Event due to its size, nature, or unusual risks, you agree to provide security from a licensed security company approved by Hotel.  Security officers may not be armed unless approved by Hotel. Group's security must provide proof of insurance and sign Hotel's hold harmless agreement. If Group fails to provide or reduces security required by Hotel, Hotel will have the right to immediately terminate the Event and collect appropriate cancellation damages and incurred Master Account charges. Hotel does not provide security for or insure personal property brought onto the premises and group is encouraged to purchase its own insurance.

*Id*.  In summary, if security became a concern related to the 2023 Annual AAF Summit, then AAF was required to provide sufficient private security.  *Id*.  The provision does not provide DoubleTree with any option to cancel or rescind the Group Event Contract simply because security issues arose; only if AAF failed to provide adequate security would DoubleTree be entitled to terminate the event at issue.  *Id*.

46.   The 2023 Annual AAF Summit was originally to feature varied panels on leadership by over thirty-six (36) professionals, advocates, and

artists, as well as ample opportunities to celebrate and share Arabic heritage. *See* Exhibit B at ¶ 8; *see also* Press Release, AAF (Oct. 11, 2023) (filed herewith as Exhibit E).

47.   As of one (1) week prior to the 2023 Annual AAF Summit, approximately two-hundred and fifty (250) individuals were pre-registered for the Summit.  Many registrants planned to bring their spouses and children, and in some cases extended family members, to Orlando, Florida to stay at the DoubleTree for the event.   *See* Exhibit B at ¶ 10.

48.   Based on past performance, AAF anticipated an even greater turnout at the Summit, which has averaged a total of 400 registrants and attendees for the years 2021, 2022, and 2024.  *Id.*

### *Cancellation of the 2023 Annual AAF Summit*

49.   Following commencement of the so-called "Israel-Hamas War," on October 7, 2023, AAF leadership determined to add programming, focus, and emphasis on Palestinian culture at its 2023 Annual AAF Summit.  *See* Exhibit B at ¶ 11.

50.   In mid-October 2023, executives, agents, officers, or other representatives of DoubleTree contacted Warren David, Co-Founder of AAF, Board Member, and primary point-of-contact for the 2023 Annual AAF Summit, to request a copy of the program for the event.  *See* Exhibit B at ¶ 12.

51.    No host or venue had made a similar request related to any prior AAF events. *Id*. at ¶ 13.

52.    AAF's programming was adjusted to align with and be sensitive to world events. The program highlighted Palestinian culture and music. *Id*. at ¶ 14.

53.    On October 26, 2023, at 5:34 p.m. EDT, the Director of Owner Relations for Hilton sent an email to the General Manager at DoubleTree—as well as  Chief Operating Officer and Executive Vice President of Operations for Cresent—explaining that Hilton had conducted research into AAF, flagging AAF's connections to the Arab American community, and expressing concerns about the upcoming 2023 Annual AAF Summit at DoubleTree.  Hilton noted AAF's connection to an Arab American United States Congresswoman and efforts to obtain federal recognition of Arab American Heritage Month.

54.    While Hilton acknowledged that AAF "does not frequently use charged rhetoric" and that the Summit "centers around Arab American empowerment," it also highlighted that the Summit would "feature segments" referencing the current crisis in Gaza.  Hilton observed, however, that "there has been no significant social conversation" about the Summit.  But Hilton nonetheless specifically requested confirmation from DoubleTree there would be "NO DoubleTree or Hilton branding during the event, i.e., no longer on podium."

55.    After receiving the above-referenced message from Hilton, the General Manager for DoubleTree, along with his Hotel Manager and Director of Sales, began to conspire about ways to prevent the 2023 Annual AAF Summit from taking place.

56.    These three (3) DoubleTree executives, agents, officers, and other known and unknown representatives or officials of DoubleTree, Crescent, and/or Hilton ("DoubleTree Conspirators") formulated a policy against hosting the 2023 Annual AAF Summit because of the Arab ancestry, heritage, or ethnic characteristics of AAF and its members.

57.    These DoubleTree Conspirators ultimately developed an agreement and plan to wrongfully and unlawfully cancel the Summit and acted in furtherance of such scheme in concert with Hilton, Crescent, and DoubleTree, to discriminate against AAF and its members based upon their Arab characteristics.

58.    They would and did cancel the imminent 2023 Annual AAF Summit to the great dismay and expense of both the AAF organization and its individual members registered for and/or planning to attend the Summit at DoubleTree.

59.    First, the DoubleTree Conspirators notified a Senior Events Manager at DoubleTree. This executive, agent, officer, or other representative of DoubleTree was the Hotel's point of contact with AAF. The DoubleTree

Conspirators asked the Senior Events Manager if he had received any calls and/or was monitoring social media about the Summit.

60.     Senior Events Manager explained that he had received a couple of calls about the Summit.  The DoubleTree Conspirators inquired with the Senior Events Manager whether callers had expressed any possible concerns related to the Summit.  They had not; more specifically, these callers had not expressed any concern of note or relevance to safety at the event.

61.     Approximately one (1) hour after the General Manager for DoubleTree received the email from Hilton detailed at Paragraph Nos. 52-53, above, the DoubleTree Conspirators drafted and sent an email to the Senior Events Manager, stating:  "The Hotel has received calls today asking questions about the event taking place at our Hotel next weekend. The calls have referenced the event being in different media channels and the surprise that Hilton would host such an event at this time."  *See* Electronic Communication (filed herewith as Exhibit F) at p. 6.

62.     This email, sent from the account of the Director of Sales for DoubleTree, continued:  "[T]he Hotel is becoming concerned that this event could cause unreasonable disruption or risk to the health and safety of our guests, employees, and the property."  *See* Exhibit F at p. 6.

63.     The email stated that Doubletree believed AAF's leadership was meeting that evening to discuss whether to proceed with the Summit and that

"the Hotel is in full support of the Board cancelling their event, to ensure the safety and security of all guests." *Id*.

64.    The Senior Events Manager for DoubleTree immediately forwarded the email to Warren David, AAFs President and primary point-of-contact for the event.  *Id*.

65.    At the time the DoubleTree Conspirators orchestrated and sent the email described above, the Hotel had received only two (2) calls about the Summit, asking whether and where the Summit was taking place. These calls were routine, ministerial, and did not present any reasonable safety or security concerns related to the 2023 Annual AAF Summit.

66.    In fact, the DoubleTree never received any calls whatsoever presenting reasonable safety or security concerns; referencing media coverage; or even expressing "surprise" that the Hotel would host the 2023 Annual AAF Summit. These statements were flatly misrepresentations by the DoubleTree Conspirators; they were completely false.

67.    At the time the DoubleTree Conspirators sent the email detailed at Paragraph Nos. 60-63, above, DoubleTree had received no health, safety, or security threats in connection with the 2023 Annual AAF Summit, nor had any local, state, or federal law enforcement presented any concerns to DoubleTree.

68.    To the contrary, the afternoon of October 26, 2023, a Lieutenant from the Orange County Sheriff's Office ("OCSO") had conducted a security

assessment and walkthrough of the DoubleTree and its conference center with the Senior Events Manager and Director of Security for DoubleTree related to the 2023 Annual AAF Summit.  The OCSO Lieutenant shared with these executives, agents, officers, or other representatives of DoubleTree his conclusion—as a professional law enforcement officer—there were no security concerns related to the 2023 Annual AAF Summit and that, as a precaution, he recommended that AAF hire four (4) off-duty OCSO officers as security for the Summit.  As explained by the OCSO Lieutenant, it was not unusual for sizeable events at large-scale Hotels to have additional security provided in this manner.

69.    Upon receiving DoubleTree's email, AAF's President, Warren David, shared it with his organizational Board, which nonetheless decided to proceed with the 2023 Annual AAF Summit as planned and authorized the expense of $4,000.00, to fund four (4) security officers as recommended upon the security assessment and walkthrough by OCSO.

70.    The next morning, October 27, 2023, AAF's President, Warren David, informed the Senior Events Manager for DoubleTree that AAF would retain and provide additional security, at its own expense, to address any security concerns and sought to finalize plans and logistics for the 2023 Annual AAF Summit.

71. After talking with AAF's President, Warren David, the Senior Events Manager for DoubleTree sent a text message to the DoubleTree Conspirators, stating incorrectly that AAF was "still on the fence with canceling" the Summit. The Director of Sales for DoubleTree instructed a Senior Sales Manager at DoubleTree to explore the possibility of rescheduling the Summit for a "more appropriate time."

72. After speaking with AAF's President, Warren David, the Senior Sales Manager relayed to the Director of Sales that AAF wanted to proceed with the 2023 Annual AAF Summit, as scheduled, because AAF and its members would suffer financially if it was rescheduled.

73. Having been made aware that AAF would not cancel its 2023 Annual AAF Summit, the Doubletree Conspirators discussed how to proceed. In text messages exchanged among them, the DoubleTree Conspirators considered making an empty offer to AAF to reschedule the Summit, knowing that DoubleTree had no intention of doing so:

> **General Manager**: Why would we postpone? Is it better for us to just cancel and be done?

> **Director of Sales**: We would simply state to reschedule to another time that is more appropriate. Or we would just straight up tell them to cancel the event and not soften it with an offer to reschedule.

> **Hotel Manager**: It's to soften the blow, but we really wouldn't rebook.

**Director of Sales**: Exactly[.] But we don't have to soften it

**General Manager**:  My vote is forget softening, cancel the event and deal with any repercussions.

74.    The DoubleTree Conspirators ultimately agreed and acted overtly in furtherance of this scheme to cancel the 2023 Annual AAF Summit without offering to reschedule it.

75.    The General Manager sent a text message to the others stating: "I would like this resolved so we can report back to Hilton that this is done."

76.    The evening of October 27, 2023, the Director of Sales for DoubleTree, after consulting with the General Manager at DoubleTree, sent an email to AAF's President, Warren David, stating that the Hotel was canceling the Summit because of "the potential risk" to attendees, staff, and other guests "under the current circumstances and world climate." *See* Exhibit F at pp. 1-2.

77.    The Director of Sales for DoubleTree further stated, "The Hotel continues to become more and more concerned that this event could cause unreasonable disruption or risk to the health and safety of our guests, employees and the property" citing AAF's inquiry into security options as an indication of why the Hotel "may not be able to safely hold" the Summit. *Id*.

78.    When DoubleTree sent the above-referenced email canceling the Summit, it was aware and had actual knowledge that no "risk to the health

and safety" of "guests, employees, and the property" had arisen related to the 2023 Annual AAF Summit. As detailed at Paragraph Nos. 64-67 above, this statement was patently false.

79.    Prior to advising AAF of the cancellation, General Manager for DoubleTree informed the Senior Vice President of Sales for Cresent of all aspects related to the plans and scheme by the DoubleTree Conspirators to cancel the 2023 Annual AAF Summit under false pretenses. He interposed no objection to the plans and/or scheme.

80.    Shortly after advising AAF of the cancellation, the General Manager for DoubleTree sent an email informing the Director of Owner Relations for Hilton, as well as the Chief Operating Officer ("COO") and Executive Vice President ("EVP") for Crescent of the cancelation, referencing the false and misrepresented "safety and security concerns."

81.    The General Manager for DoubleTree also texted the COO for Crescent, asking to update her on "an Arab group we can't have meet at our hotel."

82.    Desperate to save the 2023 Annual AAF Summit, for the benefit of its members and individuals travelling (some with their Families) to attend, AAF urgently appealed to DoubleTree urging reconsideration of the cancelation decision. *See* Exhibit F at p. 1. The Director of Sales for DoubleTree replied that the Hotel was unwilling to reconsider, given "the

serious safety risk" of holding the Summit. He did not specify any particular risk at issue.

83.    The following day, October 28, 2023, the General Manager for DoubleTree continued to search for "safety and security" risks to justify the DoubleTree's decision post hac.  He texted the Director of Sales for DoubleTree: "We are on the correct side of this one," referring to their pretext cancelation of the 2023 Annual AAF Summit.  The General Manager for DoubleTree referenced Hamas and ongoing violence in the Middle East and stated: "that this [is] not the right time to attempt to safely hold a meeting at our hotel."  He added:  "[I]t has always been about safety and security."

84.    The Director of Sales for DoubleTree responded: "Absolutely correct.  We just need to document what else other than calls so we continue to show our team the why," referencing the cancelation.  He added, "It has always been about everyone's safety."

85.    Yet the General Manager and Director of Sales for DoubleTree knew and had actual knowledge the Hotel had received zero calls that would reasonably support canceling the 2023 Annual AAF Summit.  Their text exchange underscores that the decision by DoubleTree to cancel the Summit was not based on "safety and security" and, instead, based upon an ignorant, prejudiced, discriminatory, wrongful, and improper association between the conflict in Gaza/Palestine and AAF, a not-for-profit Arab cultural and heritage

organization in the United States. Amidst the ongoing war in the Middle East, DoubleTree did not want an Arab group—in this instance, AAF—to hold any event at its Hotel.

86.    Following cancelation of the 2023 Annual AAF Summit, the COO for Cresent requested a meeting with DoubleTree staff, as well as a Senior Vice President and Corporate Counsel for Cresent.

87.    The General Manager for DoubleTree then instructed Hotel employees and staff to document their involvement in any events leading to cancelation of the 2023 Annual AAF Summit.

88.    In written memorandum, the Director of Security for DoubleTree stated her averred present "concern" that the DoubleTree had over one thousand (1000) rooms that were full and over two thousand (2000) people on the property, concluding: "I am worried for the safety and security of them and this group"—AAF—"intermingling."

89.    This was the first time in years that DoubleTree had canceled any group event against the wishes of the client-customer.

90.    The DoubleTree Conspirators were unanimous and unrelenting in their unwillingness to reschedule the Annual AAF Summit for a future date; indeed, they barred AAF from hosting any event at DoubleTree going forward.

91.    Defendant had no legitimate non-discriminatory reason for canceling the 2023 Annual AAF Summit. Hilton had conveyed to executives,

agents, officers, or other representatives of DoubleTree its concerns about the Hilton and/or DoubleTree brand being associated in any way with Arabs due to ongoing unrest in the Middle East and in particular support by AAF and its members for Palestine vis-à-vis its programming for the 2023 Annual AAF Summit as well as on social media.

92.    The DoubleTree Conspirators acted on those concerns and established and implemented a policy against hosting any Arab group—in this instance AAF and its members—directly due and solely as a result of their Arab ancestry, heritage, or ethnic characteristics, simply put, their race.

93.    Executives of Crescent, including its COO and CCO, an EVP and Vice President, as well as its Director of Owner Relations, were kept apprised of the cancelation and its aftermath.  So was the Director of Owner Relations for Hilton.  All these executives, agents, officers, and other known and unknown representatives or officials of DoubleTree, Crescent, and/or Hilton had knowledge or reason to know the falsity of any grounds for concern related to safety or security at the 2023 Annual AAF Summit.

94.    Hilton similarly canceled the 2023 National Conference planned by U.S. Campaign for Palestinian Rights ("UCFPR"), which was to be held at Hilton Post Oak Houston, from October 27-29, 2023, due to purported "escalating security concerns."

95.    But purported safety or security concerns did not prompt cancellation of the "14 Annual I LoveIsrael.org Conference," in Orlando, Florida, on which took place from October 27-29, 2023, at the DoubleTree by Hilton Hotel at the Entrance to Universal Orlando, located just 5.9 miles away from the DoubleTree by Hilton Orlando at Seaworld.

96.    The above-detailed discriminatory cancellation of the 2023 Annual AAF Summit by Defendants compelled the Civil Rights Division of the U.S. Department of Justice to bring an action alleging Defendants violated Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. §§ 2000a, *et seq*. *See* Complaint (Dkt. No. 1), *United States v. AHW Orlando Properly, LLC, d/b/a DoubleTree by Hilton Hotel Orlando at Seaworld*, No. 6:25-cv-67-GAP-DCI (M.D. Fla.) (Jan. 16, 2025). That action was resolved by the entry of a Consent Decree by this Court. *See* Consent Decree (Dkt. No. 8).

### *Plaintiffs Suffered Damages*

97.    Due to the last-minute wrongful and discriminatory cancellation of the 2023 Annual AAF Summit, AAF suffered economic damages in terms of lost expenses for overhead and costs related to the Summit as well as lost profit the organization would have received from the event, which funds the organization depends on to resource its continuous operations. *See* Exhibit B at ¶¶ 44-47. AAF also suffered damages due to resources diverted to planning

and organizing a large-scale event that ultimately did not take place due to DoubleTree's wrongful and discriminatory cancellation. *Id*.

98.    AAF members and guests who registered for and made plans to attend the 2023 Annual AAF Summit suffered damages by virtue of DoubleTree's wrongful and discriminatory cancellation of the event, including but not limited to, economic losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. *See generally* Declarations by Named Plaintiffs (filed herewith as Exhibit G).

99.    The cancellation was made by Defendants with malice or with reckless indifference to the federally protected rights of AAF members.

## CLASS ACTION ALLEGATIONS

100.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to FED. R. CIV. P.  23(a) and 23(b)(2)-(3).

101.    A class action is proper because this action involves questions of law and fact common to the class and the class is so numerous that joinder of all members is impracticable.

102.    The claims of Plaintiffs are typical of the claims of the class proposed below.

103.    Plaintiffs will fairly and adequately represent the interests of the class, and Defendants have acted on grounds that apply generally to the class,

so that relief is appropriate with respect to the class as a whole. *See* Exhibit B at ¶ 52; *see also* Exhibit F.

104.   AAF has standing both as an aggrieved party and organizational representative of its members as well as under a theory of diverted resources.

105.   Named Plaintiffs have standing both as intended third-party beneficiaries of the Group Event Contract at issue as well as victims of the unlawful discrimination by Defendants based on race, specifically, their Arabian ancestry.

106.   Plaintiffs seek to represent the following class: "AAF and all of its members, guests, or other individuals who were registered for and/or planned to attend the 2023 Annual AAF Summit that was cancelled by Defendants averred to be an intentional act of unlawful discrimination in violation of  42 U.S.C. § 1981 (a/k/a "Contracts Clause"); constitute tortious interference with contractual right; and the object of a civil conspiracy."

107.   The proposed class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential members but reasonably estimate that there are at least two hundred fifty (250) class members. This estimate is based upon the best available information per AAF records that approximately 250 individuals were registered and/or anticipated to attend the 2023 Annual AAF Summit.

108.  Questions of law and fact that predominate over any questions affecting Plaintiffs and include whether:  (a) Defendants violated 42 U.S.C. § 1981 (a/k/a "Contracts Clause"); (b) Defendant AWH breached the Group Event Contract at issue; (c) whether Defendants tortiously interfered with performance of the Group Event Contract at issue; and (d) whether Defendants engaged in a civil conspiracy to unlawfully discriminate or tortiously interfere.

109.  The claims of both AAF and Named Plaintiffs are typical of those of the entire class.

110.  The class and its members are readily ascertainable by virtue of AAF business records.

111.  Plaintiffs and undersigned counsel will fairly and adequately represent the interests of the proposed class as they seek relief on behalf of the class as a whole and they have no interests antagonistic to the class members. *See* Declarations by Named Plaintiffs (filed herewith as Exhibit G).

112.  Plaintiffs are represented by competent counsel with extensive legal experience who will fairly, responsibly, vigorously, and adequately represent the interests of prospective class members.  Counsel for the proposed class is a twenty-one (21) year attorney with significant litigation experience including class action representation. Counsel has been in private practice— primarily handling federal and state court litigation matters—for seven (7) years.  Prior to private practice, counsel served as a Supervisory Trial Attorney

at the U.S. Department of Justice for over a decade. In that capacity, he litigated numerous matters in federal district and appellate courts across the nation. Counsel also served both on active duty and in reserve status for a combined fifteen (15) years as a commissioned officer in the U.S. Army trying criminal cases in multiple military jurisdictions. Counsel is currently an executive officer of American Immigration Lawyers Association ("AILA") and the Federal Bar Association, Immigration Law Section ("FBA-ILS"), Consular Accountability Project ("CAP"), and regularly consults with International Refugee Assistance Project ("IRAP"); Project ANAR; American Immigration Council ("AIC"); Operation Snow Leopard; Association of Wartime Allies ("AWA"); Veterans for American Ideals ("VFAI"), a project of Human Rights First; the American Civil Liberties Union ("ACLU"), and several other legal aid organizations. Counsel for the proposed class is sufficiently qualified, experienced, and able to vigorously conduct litigation on behalf of the proposed class.

113. The relief requested is appropriate to remedy the harms that affect all class members, and the class should be certified under FED. R. CIV. P. 23(b)(2)-(3).

114. All conditions precedent to bringing this action have occurred or have been waived.

115.   Plaintiffs now bring this action for unlawful discrimination in violation of 42 U.S.C. § 1981; breach of contract; tortious interference with a contractual right; and civil conspiracy, seeking an award of both compensatory and punitive damages.

**CLAIMS FOR RELIEF**

**COUNT I**
**UNLAWFUL DISCRIMINATION**
**VIOLATION OF 42 U.S.C. § 1981**
*All Plaintiffs Against All Defendants*

116.   Plaintiffs adopt, repeat, and reallege all foregoing allegations in Paragraphs 1-112 above as though fully stated and set forth herein.

117.   Section 1981 of Title 42, United States Code, protects the equal right of all persons, regardless of race, "to make and enforce contracts." *See* 42 U.S.C. § 1981.

118.   Under Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

119.   An impaired contract is at issue, to wit:  the Group Event Contract between Plaintiff AAF and Defendant AWH described with particularity at Paragraph Nos. 37-43 above ("Group Event Contract").

120.   AAF had an interest in the Group Event Contract as a direct party and signatory to the agreement.

121.    Members of AAF attending or planning to attend the 2023 Annual AAF Summit—whose attendance, lodging, and comfort the Group Event Contract was directly and primarily intended to benefit—have an actionable interest in the agreement as third-party beneficiaries.

122.    AAF and its members are members of a racial minority, to wit: Arab or Arabian ancestry, heritage, or ethnic characteristics.

123.    As detailed at Paragraph Nos. 47-93 above, Defendants intended to discriminate on the basis of race in connection with AAF and its members attending or planning to attend the 2023 Annual AAF Summit.

124.    This discrimination by Defendants in connection with Plaintiffs concerned one or more activities enumerated at 42 U.S.C. § 1981, to wit: "to make and enforce contracts," specifically, the rights of Plaintiff to making, performance, vis-à-vis termination, and/or the enjoyment of all benefits, privileges, terms, and conditions of the Group Event Contract at issue.

125.    Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiffs.

126. As a direct and proximate result of the wrongful and discriminatory cancellation of the 2023 Annual AAF Summit by Defendants and their refusal to honor the Group Event Contract with AAF, for which Named Plaintiffs were intended beneficiaries, AAF has suffered and continues to suffer economic losses and Named Plaintiffs have suffered and continue to

suffer economic losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT II**
**BREACH OF CONTRACT**
**[*Florida Common Law*]**
*Named Plaintiffs Against Defendant AWH*

127.    Plaintiffs adopt, repeat, and reallege all foregoing allegations in Paragraphs 1-112 above as though fully stated and set forth herein.

128.    A contract exists, to wit:  the Group Event Contract between Plaintiff AAF and Defendant AWH described with particularity at Paragraph Nos. 37-43 above ("Group Event Contract").

129.    Members of AAF attending or planning to attend the 2023 Annual AAF Summit—whose attendance, lodging, and comfort the Group Event Contract was directly and primarily intended to benefit—have an actionable interest in the agreement as third-party beneficiaries.

130.    Defendant AWH materially breached the Group Event Contract by cancelling and terminating the agreement and the event that it was intended to facilitate without any contractual or legally sufficient justification, privilege, excuse, or defense.

131.    As a direct and proximate result of the material breach, AAF has suffered and continues to suffer economic losses and Named Plaintiffs have suffered and continue to suffer economic losses as well as emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT III
### TORTIOUS INTERFERENCE
### WITH CONTRACTURAL RIGHT
### [*Florida Common Law*]
#### *All Plaintiffs Against All Defendants*

132.   Plaintiffs adopt, repeat, and reallege all foregoing allegations in Paragraphs 1-112 above as though fully stated and set forth herein.

133.   A contract exists, to wit:   the Group Event Contract between Plaintiff AAF and Defendant AWH described with particularity at Paragraph Nos. 37-43 above ("Group Event Contract").

134.   Members of AAF attending or planning to attend the 2023 Annual AAF Summit—whose attendance, lodging, and comfort the Group Event Contract was directly and primarily intended to benefit—have an actionable interest in the agreement as third-party beneficiaries.

135.   Defendants had knowledge of the Group Event Contract at issue.

136.   As detailed at Paragraph Nos. 47-93, above, Defendants intentionally procured breach of the Group Event Contract at issue without any contractual or legally sufficient justification, privilege, excuse, or defense.

137.   Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiffs vis-à-vis their tortious interference with the contractual right(s) at issue.

138.   As a direct and proximate result of this tortious interference with a contractual right and concomitant material breach, AAF has suffered and continues to suffer economic losses and Named Plaintiffs have suffered and continue to suffer economic losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### COUNT IV
### CIVIL CONSPIRACY
***All Plaintiffs Against All Defendants***
**[*Florida Common Law*]**

139.   Plaintiffs adopt, repeat, and reallege all foregoing allegations in Paragraphs 1-112 above as though fully stated and set forth herein.

140.   arabetween at least two (2) parties, specifically, executives, agents, officers, or other representatives of Defendants, including DoubleTree, AWH, Crescent, and/or Hilton.

141.   The agreement between Defendants was meant to achieve an unlawful or wrongful act, to wit:  unlawful discrimination in violation of 42 U.S.C. § 1981 and/or tortious interference with the contractual right(s) at issue.

142.   All Defendants involved had knowledge of the civil conspiracy and participated in the civil conspiracy in some way.

143.   As detailed at Paragraph Nos. 47-93 above, Defendants executed one or more overt acts in furtherance of the civil conspiracy.

144.    Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiffs in connection with their civil conspiracy.

145.    As a direct and proximate result of the civil conspiracy, AAF has suffered and continues to suffer economic losses and Named Plaintiffs have suffered and continue to suffer economic losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, by and through undersigned counsel, Plaintiffs Arab America Foundation, on behalf of itself and its members, and Adel Henawi, Karim Karam, Lily Karam, Lina Shatara, Omar Kurdi, Stefan Ateek, and Wally Yazbak, on behalf of themselves and others similarly situated, respectfully request the Court enter an Order:  (a) certifying under FED. R. CIV. P. 23(a) and 23(b)(2)-(3) the class defined as: "AAF and all of its members, guests, or other individuals who were registered for and/or planned to attend the 2023 Annual AAF Summit that was cancelled by Defendants averred to be an intentional act of unlawful discrimination in violation of  42 U.S.C. § 1981 (a/k/a "Contracts Clause"); constitute tortious interference with contractual right; and the object of a civil conspiracy"; (b) appointing AAF and Named Plaintiffs as class representatives and undersigned counsel as class counsel; (c) recording judgment against Defendants as to Counts I-IV; (d) awarding

appropriate compensatory and punitive damages to be determined at an evidentiary hearing; (e) declaring their entitlement to their reasonable costs and attorney fees; and (f) granting such other and further relief as the Court deems equitable and just.

## DEMAND FOR A JURY TRIAL

In accordance with FED. R. CIV. P. 38(b)(1), Plaintiffs respectfully demand a trial by jury on all issues so triable as a matter of right.

Date:  May 19, 2025                     Respectfully submitted,

                                        **DEMPSEY LAW, PLLC**

                                        By:  /s/ Christopher W. Dempsey
                                        CHRISTOPHER W. DEMPSEY, ESQ.
                                        N.D. Fla. Bar No. 1038319
                                        50 North Laura Street, Suite 2500
                                        Jacksonville, Florida 32202
                                        Tele: (904) 760-6272
                                        Email: chris@cdempseylaw.com

                                        ***Attorney for Plaintiffs***